UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-15-320 |
| DOMINIC RENARD LINDSEY | § § | |

### PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Jennie Basile, Assistant United States Attorney, and Defendant Dominic Renard Lindsey and Defendant's counsel Stephen Randall, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The Defendant agrees to plead guilty to Counts One and Two of the Indictment. Count One charges the Defendant with Aggravated Bank Robbery in violation of Title 18, United States Code, Sections 2113 (a) and (d). Count Two of the indictment charges the Defendant with Brandishing a Firearm in Furtherance of a Crime of Violence in violation of Title 18 United States Code, Section 924(c)(1)(A)(ii). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2.   The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 2113 (a) and (d) and 2 is a term of imprisonment up to 25 years and a fine of not more than $250,000. Additionally, the Defendant may receive a term of supervised release after imprisonment of up to five years. The statutory penalty for a conviction of Title 18, United States Code, Section 924(c)(1)(A)(ii) is mandatory consecutive term of imprisonment of not less than seven years in addition to the underlying conviction. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 5 years. Title 18, United States Code, §§ 3559(a) and 3583(b). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.   Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4.     Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if he is not a citizen of the United States. Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Cooperation**

5.     The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose restitution. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.     Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Agreement and that he cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal**

7. Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence

imposed, or the manner in which the sentence was determined. Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to contest his conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his guilty plea** and is binding on neither the United States, the Probation Office, nor the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

   (a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2)- level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.); and

   (b) If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States may move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his/her role in the offense.

### Agreement Binding - Southern District of Texas Only

11. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

   (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

   (b) to set forth or dispute sentencing factors or facts material to sentencing;

   (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

### Rights at Trial

14. Defendant represents to the Court that he is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and

7

the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he is guilty of the charges contained in Counts One and Two of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On May 18, 2015, a suspect entered the BBVA Compass Bank, located at 6011 FM 2100 Road, Crosby, Texas 77532, which was insured by the Federal Deposits Insurance Corporation. The suspect was armed with a firearm and demanded that the bank teller give him money. The suspect stole $29,761.00 in United States currency and then fled the bank location. Witnesses inside the bank stated that the subject was a black male. Video surveillance recorded the suspect entering the bank, pointing his weapon at customers and employees forcing them to go prone on the ground, and taking money from the teller.

A witness outside the bank was waiting for his wife to conduct a transaction inside the bank. Once the subject robbed and departed the bank, the witness followed the subject to the

back of Creative Corners day care center, 119 S Diamondhead Boulevard, Crosby, Texas, located about 75 meters from the bank. The witness lost sight of the subject as the subject went behind the building. The witness drove his vehicle against traffic to get to the other side of the day care, and parked in front of a Center Point Energy Jeep utility vehicle. Once he parked in front of the Jeep, the witness saw a black male coming towards him from the direction that the subject should have been approaching. The witness confronted the subject, and asked what was going on and whether he was involved in the bank robbery. The subject stated, "You must be crazy! You don't know what you are talking about," as he placed two black canvas bags into the back of the Jeep. The witness continued to argue with the subject, and the subject went back and removed the bags, and went back into the area of the foliage behind the day care center. At this time, the witness went back to his vehicle and moved his vehicle to the front of the bank.

The suspect, identified as **Dominic Renard Lindsey**, went back to the bank to ask about what happened at the bank. **Lindsey** then went back to his vehicle, where he was detained by Harris County Sherriff's Office (HCSO) Deputies.

FBI Special Agent Mario S. Aguilar walked with the witness back to the location of the Jeep, where the witness identified **Dominic Renard Lindsey** as the individual he saw walking from the foliage behind the child day care center. Special Agent Aguilar confirmed that **Lindsey** was employed as a contractor for Center Point Energy. **Lindsey** claimed to have a work ticket justifying his location behind Creative Corners day care center and claimed that he was there marking a gas line.

The Center Point Energy Supervisor responded to the scene and advised that **Lindsey** did not have a work order at that location, but did have a work order for the intersection of FM 2100

9

and Smith, which was approximately 8.4 miles away from the bank, according to Google Maps. The supervisor then took out his gas line detection meter and walked behind the day care and confirmed that there was no gas line there and there was no reason for the subject to be there to mark those areas.

**Lindsey** and the supervisor gave consent to search the Center Point Energy white Jeep. Inside the Jeep agents discovered a pair of light-gray sneakers behind the driver seat on the floor board with white laces, which matched the security video of what the subject was wearing during the robbery.

Houston Police Department (HPD) Task Force Officer David DeTorres reviewed video from the Crosby Volunteer Department, 123 South Diamondback Blvd, Crosby, Texas, capturing the suspect moving between the Center Point utility vehicle and the foliage behind the Creative Corners day care center. The suspect was seen on footage dropping what appeared to be a black glove inside the storm drain behind the day care center. Once investigators searched the storm drain, the only item found was a right-handed black glove, which appeared to be recently dropped, as it was not wet or soiled due to inclement weather. The suspect who robbed the bank wore black gloves.

After searching the foliage repeatedly behind the day care center, a HCSO K-9 unit located a black hooded sweatshirt, and a left-handed black glove, secreted in the area where **Lindsey** was seen going into the foliage. Upon further examination of the black hooded sweatshirt, it was found to contain a large amount of U.S. currency, both banded and unbanded, to include bait and mutilated money. Also located in the sleeve of the black hooded sweatshirt

was an unloaded .357 revolver, similar in color and style to the gun used during the bank robbery. A black neoprene mask was found with the black hooded sweatshirt.

Investigators also reviewed surveillance footage from the Shell gas station, located on 6007 FM 2100 Road, Crosby, Texas, which was right next to the bank. The footage revealed that, between the hours of 08:30 AM and 08:45 AM, the subject's white Jeep parked at Pump Number 1, and the driver never exited the vehicle. The white Jeep then entered the parking lot of the bank and circled the building. The white Jeep was then seen exiting the parking lot of the bank. A short time later, a black male, matching the subject's description, ran into the front door of the bank. A few minutes later, the same subject was seen running out of the bank towards the day care center.

A bank teller stated that she arrived at the bank at 07:25 AM, and saw a white four-door Jeep with the Center Point logo on the doors at approximately 07:30 AM. At approximately 08:00 AM, the teller saw the same Jeep drive up to the front doors, as if trying to identify what time it opened. At approximately 08:20 AM, she saw the same Jeep at the gas station at Lane 1, and saw the Jeep moving to Lane 2. As it departed the gas station, the Jeep moved towards the direction of the day care center and disappeared. The teller stated that the bank robbery occurred at 09:20 AM.

### Breach of Plea Agreement

16. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly

withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

17.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) by the deadline set by the United States, or if no deadline is set, prior to sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to

facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations. Defendant agrees to pay restitution for all uncharged bank robberies.

### Forfeiture

21. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property

22. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Rule 32.2(b)(4)(A), Fed.R.Crim.Pro.

24. Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine

imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

26.　This written Plea Agreement, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

27. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___March 23___, 2016.

_____
Dominic Renard Lindsey
Defendant

Subscribed and sworn to before me on ___March 23___, 2016.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____
Jennie L. Basile
Assistant United States Attorney
Southern District of Texas

_____
Stephen Randall
Attorney for Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-15-320 |
| DOMINIC RENARD LINDSEY | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____          3/23/16
Stephen Randall                  Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____          3/23/16
Dominic Renard Lindsey           Date
Defendant